UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSRAM SYLVANIA INC.,

                        Plaintiff,

  -against-

LEDVANCE LLC,

                        Defendant.

20-cv-9858 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiff Osram Sylvania Inc. (OSI; the parties call its German parent company "Osram") and Defendant Ledvance both make lights. OSI owns the "Sylvania" trademark but licensed it and some of its other marks to Ledvance for use on specific products. Dkt. 161 ¶ 10. OSI says Ledvance breached that licensing agreement, so it brought claims for common-law breach of contract as well as federal trademark infringement and unfair competition. Am. Compl., Dkt. 108. Ledvance brought various counter- and third-party claims. Am. Answer, Dkt. 111. OSI now moves for partial summary judgment on liability for its breach-of-contract and trademark-infringement claims. Dkt. 155. For the reasons below, the motion is DENIED.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up).

## DISCUSSION

### I. Breach of contract

To win on a breach-of-contract claim under New York law (which the parties agree applies), a plaintiff must show that "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (citations omitted). Ledvance says there are genuine disputes of material fact on elements three and four.

OSI's contract claim hinges on § 12.8(a) of the licensing agreement:

> Unless otherwise stated herein, only Licensor [OSI] is entitled to run SYLVANIA brand shops on e-business or e-commerce platforms. Brand shops on an e-business

> or e-commerce platform means brand-by-brand structured webpages within a sales or advertising platform, such as www.ebay.com or www.amazon.com, where various products of specific brands (for example, the brand SYLVANIA) are listed on a brand-by-brand basis. Licensee [Ledvance] may request in writing that Licensor [OSI] grant its consent to display Contract Products branded with Licensed SYLVANIA Product Trademarks in Licensor's [OSI's] brand shops on e-business or e-commerce platforms or integrate a new product category (e.g., lamps) into the existing brand shop.

Dkt. 156-3 § 12.8(a).

Section 12.8(c) of the agreement further provides:

> Should Licensor [OSI] decide not to run a brand shop on an e-business or e-commerce platform, Licensee [Ledvance] may run its own SYLVANIA branded shop, subject to the prior consent of, and alignment with, Licensor [OSI]. Such consent shall not be unreasonably withheld or delayed. Should Licensee [Ledvance] run a SYLVANIA brand shop on an e-business or e-commerce platform, Licensee [Ledvance] shall exclusively use the shop to display Contract Products branded with Licensed SYLVANIA Product Trademarks and follow the SYLVANIA Guidelines (Schedule 10.3).

*Id.* § 12.8(c).

OSI argues that Ledvance violated the agreement by operating a "SYLVANIA brand shop." In 2018, OSI's vendor, Pattern, established an "Amazon Storefront" for OSI. *Id.* ¶ 35. But from October 2019 to November 2020, Ledvance ran its own Amazon Storefront titled "Sylvania General Lighting." *Id.* ¶¶ 45–47. (An Amazon Storefront is essentially a brand-specific page on the Amazon website. *Id.* ¶ 31.) OSI sent a letter to Ledvance, objecting to its Storefront, in August 2020. Dkt. 156-9. In November, Ledvance renamed its page "Sylvania by Ledvance" for one week and then settled on "The Ledvance Store." Dkt. 161 ¶¶ 47–48.

Ledvance admits that the "Sylvania General Lighting" page was a brand shop under the licensing agreement. *Id.* ¶ 51. But it claims that it had permission to set up that page under § 12.8(c). *Id.* ¶ 52. And it says that "The Ledvance Store" isn't a "SYLVANIA brand shop" under § 12.8(a). *Id.* ¶ 51. These arguments involve genuine disputes of material fact.

### A. Permission under § 12.8(c)

As to the first condition for permission under § 12.8(c), Ledvance says OSI had "decide[d] not to run a brand shop" because the Sylvania brand shop was run by Pattern. *Id.* ¶ 38 (citing deposition testimony of Pattern's representative). OSI's response is that Pattern "operates the store with OSI's approval," so OSI still "run[s]" the store (the term in § 12.8) even if Pattern "controls" it. Dkt. 165 at 7. But Pattern's control seems substantial. There is evidence that it actually owns the inventory listed on the site. Dkt. 156-19 at 14:20–15:12. And the licensing agreement doesn't address whether third-party stores approved by OSI are still "run" by OSI, nor has OSI submitted extrinsic

evidence that erases any doubt about that question. At the very least, what it takes to "run" a brand shop is not "reasonably susceptible of only one meaning," so it is ambiguous. *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (citation omitted); *see also Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 528 (2d Cir. 1990) ("Summary judgment normally is inappropriate when a contractual term is ambiguous because a triable issue of fact exists as to its interpretation." (citation omitted)). Separately, depending on the conduct described below, the condition that OSI "not run a brand shop" might have been waived altogether.

Next, Ledvance says it got OSI's "consent" through the "Brand Council." Dkt. 161 ¶ 52. The licensing agreement said that the "Parties shall establish a Brand Council." Dkt. 156-3 § 13.1. And "[a]ny matter requiring … approval by either Party under this [agreement] shall be submitted to a Brand Council member representing the relevant party." *Id.* § 13.2. Ledvance has produced evidence that it spoke about the brand shop with Stefan Schwarz, "the Brand Manager of Osram [OSI's parent company]" and chairman of the Brand Council. Am. Answer ¶ 13; Dkts. 56, 63. The parties dispute what was said during these conversations, but Ledvance says Schwarz gave "Sylvania General Lighting" the go-ahead. Dkt. 161 ¶¶ 52–54.

OSI responds that Schwarz's Brand Council was (1) not the Brand Council described in the licensing agreement and (2) not its agent. Both arguments rely on the idea that Schwarz was really the head of the *European* Brand Council, which had been set up by OSI's and Ledvance's *parent* companies. Dkt. 165 at 5. Ledvance responds that the European Brand Council must have been the licensing agreement's "Brand Council" because it was the only one and because it handled both European and U.S. business. But the parties haven't addressed whether a Brand Council could be "establish[ed]" simply by choosing an existing one. Nor have they addressed what it would mean if the contract was breached by failing to establish a Brand Council at all. So the Court declines to resolve this question.

In any event, Ledvance's main argument is that the conditions in § 12.8(c) were waived. So more to the point is whether Schwarz or the European Brand Council was OSI's agent or could otherwise act on its behalf. On agency, it's unclear whether Ledvance is relying on actual authority (express or implied), apparent authority, or both. Regardless, the issue involves underlying facts. Actual authority exists when "the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act." *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996). "Apparent authority … arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him." *Id.* (cleaned up). "Generally, the existence of either actual or apparent authority is a question of fact, revolving as it does around the actions by, and relationships between, principal, agent, and third parties." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 71 (2d Cir. 2012).

Here, there is a genuine dispute over whether OSI gave Schwarz or the European Brand Council authority or suggested to Ledvance that it did. For starters, the licensing agreement itself (which was "solely drafted by OSI") requires a Brand Council and that "[a]ny matter requiring submission

3

to or approval by either Party under this [agreement] shall be submitted to a Brand Council member representing the relevant party." Dkt. 167 ¶ 1; Dkt. 156-3 § 13.2. The European Brand Council was made up of representatives of the parent companies, and Schwarz was Osram's brand manager. According to Ledvance, Schwarz certainly thought he could consent on OSI's behalf here. That belief was reasonable (for both Ledvance and Schwarz) because, Ledvance says, the European Brand Council routinely "acted on behalf of both OSRAM and OSI in overseeing the enforcement of the [licensing agreement] in the United States." Dkt. 161 ¶ 53 (collecting record citations). And OSI representatives took part in or were informed of many of these acts and meetings. *See, e.g.*, Dkt. 61-1 at 2. These facts are enough to create a genuine dispute over the precise nature of the relationships among OSI, Schwarz and the European Brand Council, and Ledvance.

OSI says Ledvance cannot make this consent argument because it did not plead "agency" as an affirmative defense in its answer. Not so. One of Ledvance's arguments here is that it simply didn't breach, which is not an affirmative defense. It also argues that Schwarz's permission operates as a waiver or estoppel. Those defenses were pleaded in Ledvance's answer. Am. Answer at 7. Agency (even on OSI's theory) is simply an element of those defenses.

Finally, OSI argues that even if Ledvance got consent for its brand shop, that consent was revoked on August 14, 2020. On that date, OSI served a cure notice on Ledvance, giving it thirty days to cure its supposed breaches. Dkt. 156-9. Ledvance did not remove "Sylvania" from its brand shop until November. Although the cure notice gave Ledvance thirty days, that number was based on a provision in the licensing agreement that gave OSI the power to terminate the agreement if breaches were not cured within thirty days. Dkt. 156-3 § 33.2(b). But OSI didn't terminate the agreement, so it's not clear why the thirty-day time limit is material here.

And if Ledvance was not in breach, the background common-law rule applies: after a waiver is withdrawn, a party has "a reasonable time" to perform. *See Nassau Tr. Co. v. Montrose Concrete Prod. Corp.*, 56 N.Y.2d 175, 184 (1982). Whether the relevant provisions were waived depends on the facts described above. (The parties don't address whether a different rule would apply if OSI was estopped or Ledvance didn't breach.) And whether three months was "reasonable" depends on other facts that OSI did not address. For example, the parties were continuing to discuss the issue after the thirty days. Dkt. 161 ¶¶ 75–76. Relatedly, even if three months was unreasonable, it's unclear whether the extra couple of months would constitute a material breach. So there are genuine disputes of material fact on this issue too.

### B. Meaning of "brand shop" under § 12.8(a)

Although Ledvance has stopped using "Sylvania" in its brand shop's name, OSI says it is still in breach because its brand shop includes many (licensed) products bearing the Sylvania mark. Under § 12.8(a), "brand shops" are "brand-by-brand structured webpages within a sales or advertising platform … where various products of specific brands … are listed on a brand-by-brand basis." Ledvance's page continues to list Sylvania products, but it also lists non-Sylvania products. The relevant "brand," then, would seem to be Ledvance, not Sylvania. And § 12.8(c)'s use of

4

"branded *shop*" seems to reinforce the idea that it's the branding of the shop, not that of the products within it, that is relevant. Perhaps OSI could show that the parties had a specific understanding of "brand-by-brand" or that the non-Sylvania products on Ledvance's page are meaningless additions just to evade the contract. But the meaning of "brand shop" does not unambiguously favor OSI.

Finally, Ledvance argues that OSI has "not established any damages caused by the alleged breach." Dkt. 160 at 19. This argument would be a ground for summary judgment in Ledvance's favor, though it didn't cross-move. In any event, the argument fails. To show damages resulting from the breach of contract, the plaintiff must show proximate cause. *See Lola Roberts Beauty Salon, Inc. v. Leading Ins. Grp. Ins. Co.*, 160 A.D.3d 824, 825 (2d Dep't 2018). Here, Ledvance says causation is lacking because OSI's harm was caused by Amazon's choice (or error) to sever certain hyperlinks. But, "[g]enerally, it is for the trier of fact to determine the issue of proximate cause." *Id.* (citation omitted). And proximate cause is at least arguable here. OSI argues that it was Ledvance's store that caused Amazon's behavior in the first place. Although Amazon's conduct might be characterized as an intervening event, it is not the kind of "extraordinary" or totally unforeseeable intervening event that would warrant deciding causation on summary judgment. *See Jorgensen v. Century 21 Real Est. Corp.*, 217 A.D.2d 533, 534 (2d Dep't 1995).

## II.   Trademark infringement

OSI has also moved for summary judgment on its trademark-infringement claims. First, it says it is entitled to summary judgment on the infringement claim relating to the brand shops because Ledvance exceeded its license. For the reasons above, that issue cannot be decided on this motion.

Second, OSI says Ledvance continued to use a group of marks known as the "Quick Marks" after the license expired. The record on this issue is thin. OSI's main evidence is a series of screenshots from sylvania.com, a website licensed to Ledvance. Dkt. 155-5. Although these webpages do not include specific product listings, they tout the features of certain products and include links to "View [those] Products." *Id.*

Ledvance says using the marks on the website was "nominative fair use in the resale of goods purchased from the trademark holder." Dkt. 160 at 25. This argument raises an issue of fact. Although the record is again thin, Ledvance has produced some evidence that it fully purchased the Quick Marks products from OSI and was merely a reseller. *See* Dkt. 161 ¶ 18; Dkt. 162 ¶ 10. If Ledvance was acting merely as a reseller, it could use the marks to describe and sell those products. *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102–03 (2d Cir. 2010); *see also McCarthy on Trademarks and Unfair Competition* § 25:41; 15 U.S.C. § 1115(b)(4).

There is one last wrinkle. "Quick 60+," one of the Quick Marks, was a warranty program. Dkt. 161 ¶ 18. But Ledvance ended it even before the Quick Marks license expired. *Id.* Yet Quick 60+ was one of the marks used on the website to describe the products. *See* Dkt. 155-5. So even if Ledvance was authorized to use some Quick Marks to describe the products for resale, it

5

was inaccurate to use Quick 60+. Perhaps OSI could argue that inaccurately describing the products as having the Quick 60+ warranty is akin to "so misrepresent[ing] the quality of the goods of another as to lead the public to suppose that the goods are of a different quality from what is being sold." *McCarthy on Trademarks and Unfair Competition* § 25:46 (quoting *Cheney Bros. v. Gimbel Bros.*, 280 F. 746, 748 (S.D.N.Y. 1922) (A. Hand, J.)). But the parties have not addressed this question. And in any event, it is one of materiality, which "is a question of fact." *Id.* § 25:41.

## CONCLUSION

For these reasons, Plaintiff's motion is DENIED. The Clerk of Court is directed to close Dkt. 155.

SO ORDERED.

Dated: February 29, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge